Receipt # 065764
ORIGINAL

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
DEC - 1 2006
U.S. COURT OF FEDERAL CLAIMS

**GRUNLEY-WALSH, LLC**
**(f/k/a Grunley-Walsh Construction JV)** *

**Plaintiff,** *

**v.** *

**THE UNITED STATES OF AMERICA** *

**Defendant.** *

**Case No.: 06-816 C**
**Judge:**
**(Monument Lodge Site Improvements Claim)**

* * * * * * * * * * * * *

## COMPLAINT

Plaintiff, Grunley-Walsh, LLC, formerly known as Grunley-Walsh Construction JV, ("Grunley-Walsh"), by its counsel, Roger C. Jones, Esq., of Huddles Jones Sorteberg & Dachille, P.C., sues the United States of America ("United States"), and for its Complaint in the above matter, respectfully states as follows:

### Jurisdiction

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1491. Plaintiff brings this action pursuant to the Contract Disputes Act of 1978, as amended, 41 U.S.C. § 601 *et seq.* In addition, this action is related to Case Nos.1:06-cv-00721-CFL and 1:06-cv-00723-CFL, as it arises out of the same contract and, therefore, should be consolidated with Case Nos. 1:06-cv-00721-CFL and 1:06-cv-00723-CFL.

### The Parties

2. Plaintiff, Grunley-Walsh, is a general contractor in the construction industry organized and existing under the laws of the State of Maryland, with its principal place of business located at 5010 Nicholson Lane, Suite 200, Rockville, Maryland 20852.

3. Defendant is the United States of America.

## The Contract

4. On May 6, 1998, the United States, acting by and through the Department of the Interior – National Park Service, awarded Grunley-Walsh an Indefinite Quantity Contract (Contract No. 1443CX305998901) (the "Contract") to stabilize and preserve the Washington Monument (the "Project"). The Contract is incorporated by reference herein, but is not attached due to its voluminous nature. Defendant has a copy of the Contract in its possession.

5. Pursuant to Contract Modification No. 0007 ("Contract MOD 7"), dated November 15, 2001, the General Provisions to the Contract were deleted and replaced with revised contract clauses which included certain FAR provisions incorporated by reference. A copy of MOD 7 is attached hereto as **EXHIBIT A.** Two of these provisions were the Changes clause (FAR 52.243-04 August 1987) and the Disputes clause (FAR 52.233-01 December 1998).

6. In accordance with the Contract, on December 5, 2003, Grunley-Walsh was issued Task Order No. T3059989135 ("Task Order No. 35") in the lump sum amount of $13,993,216. Pursuant to Task Order No. 35, Grunley-Walsh was to construct and install an above ground security barrier system at the Washington Monument. More specifically, Grunley-Walsh was to accomplish the work contained in the Project Requirements (Task Order No. 35, Attachment 1) and specifications and drawings prepared under previous Task Order by the Olin Partnership. A copy of Task Order No. 35, including its Attachment 1 Project Requirements is attached hereto as **EXHIBIT B.**

7. The drawings and specifications prepared by the Olin Partnership are dated November 25, 2003 and purport to be the 90% Construction Drawings.

8. With regard to work in the Monument Lodge area of the Project, the contract drawings upon which Task Order No. 35 was based clearly indicated the work was "NIC" (i.e.,

Not In Contract"). This work was NIC because it was unclear whether the Park Service would have funding available to construct a Visitor's Center at the location of the Monument Lodge when Task Order No. 35 was issued. The Monument Lodge area of the Project and the proposed location of the Visitor Facility are depicted in the contract drawing excerpts below:




11/25/03 Contract Drawing Excerpt – Sheet L5.4




11/25/03 Contract Drawing Excerpt – Sheet L6.1

**The Certified Claim for Monument Lodge Site Improvement Change Work**

9. This action relates to a September 28, 2006 certified claim, in the amount of $60,708 submitted by Grunley-Walsh to the Contracting Officer (the "Certified Claim") pursuant to the Changes clause and the Disputes clause in the Contract. A copy of the Certified Claim is attached as **EXHIBIT C**.

10. By letter dated October 18, 2006 (attached as **EXHIBIT D**), the Contracting Officer advised that a Final Decision would not be issued on the Certified Claim until after Grunley-Walsh had submitted all their claim submissions for the Project. Specifically, the Contracting Officer stated in his October 18, 2006 letter he would be "issuing one final decision after we have received the final claim in the series." In doing so, the Contracting Officer did not provide a time and/or a date certain for when a Final Decision on the Certified Claim could be expected.

11. Based on the Contracting Officer's October 18, 2006 letter, the time within which the Contracting Officer will issue a Final Decision is left open ended.

12. As permitted by the Contract Disputes Act, more than 60 days has elapsed since submission of the Certified Claim; there has been no Final Decision issued on the Certified Claim; and the Contracting Officer has not committed to a date by when a Final Decision on the Certified Claim will be issued. As such, the Certified Claim is deemed denied.

**Factual Background for the Certified Claim**

13. Prior to the issuance of Task Order No. 35, the drawings issued on August 4, 2003 depicted a Visitor's Center in the location of the Monument Lodge, which was to be constructed both above ground and underground; providing access to the base of the Washington Monument through an underground tunnel.




8/4/03 Visitor Center Drawing Excerpt – Sheet A2.3




8/4/03 Visitor Center Drawing Excerpt – Sheet A3.2

14. In preparation for the construction of the Visitor Center work, the Park Service issued Grunley-Walsh Task Order No. 34 to demolish an existing food service area at the rear of the Monument Lodge and to demolish the interior of the Monument Lodge itself. After this work was completed, the remaining existing structures included a concrete patio slab where the food service area had been located and the Monument Lodge building.




8/4/03 Visitor Center Drawing Excerpt – Sheet D1.1

15. The November 25, 2003 Task Order No. 35 contract drawings contained absolutely no information or details about what was to be constructed because as indicated on the drawings the area in the location of the Monument Lodge was not in contract. Grunley-Walsh understood they were responsible for constructing the horseshoe shaped wall that encircled the rear of the Monument Lodge, but nothing inside the wall. In this regard, the contract drawings depicted the horseshoe shaped wall in plain view, but they did not provide any elevations or cross section details of the wall. In contrast, the August 4, 2003 drawings provided elevation and cross section details of the horseshoe shaped wall, which was to contain an underground air intake system for the underground portion of the proposed Visitor's Center.

Cross Section – Horseshoe Shaped
Monument Lodge Wall Air Intake Louver System



8/4/03 Visitor Center Drawing Excerpt – Sheet A4.6

16. Due to the absence of detail in the November 25, 2003 Task Order No. 35 contract drawings, by letter dated June 1, 2004 (see **Exhibit 2** to the Certified Claim), Grunley-Walsh asked what specifically was to be done in the location of the Monument Lodge because Grunley-Walsh needed approval from the Park Service to proceed with construction of the wall that encircled the Lodge. In response, by letter received June 18, 2004 (see **Exhibit 3** to the Certified Claim), the Park Service responded to Grunley-Walsh indicating their plans for the construction of a new Visitor's Center still remained pending and that Grunley-Walsh was to suspend all work within 50 feet of the Monument Lodge.

17. Based on this directive from the Park Service, by letter dated June 22, 2004 (see **Exhibit 4** to the Certified Claim), Grunley-Walsh advised the Park Service they would not be able to build the wall around the Monument Lodge and all concrete wall work in this area would have to be halted until permission was provided to continue with construction activities.

18. Pursuant to the Park Service's directive, during the months of June, July, August and September 2004, work at the Monument Lodge wall area remained on hold. For this reason, by letter dated September 16, 2004 (see **Exhibit 5** to the Certified Claim), Grunley-Walsh again

asked the Park Service if they could proceed with work at the Monument Lodge wall. In doing so, Grunley-Walsh advised that failing to allow work to proceed in this area might place the Monument Lodge itself in the center of a large storm water retention pond.

19. As a follow-up to Grunley Walsh's request, by Memorandum dated September 22, 2004 (see **Exhibit 6** to the Certified Claim), Grunley-Walsh again inquired as to whether work at the Monument Lodge wall could proceed.

20. Nearly a month later, by letter dated October 20, 2004 (see **Exhibit 7** to the Certified Claim), the Park Service finally authorized Grunley-Walsh to proceed with work at the Monument Lodge horseshoe shaped wall. This included construction of the wall itself, installation of the drainage system under the "trip strip" perimeter outside the wall and grading up to the wall itself. With regard to the Monument Lodge exterior work, the Park Service's letter indicated they were preparing a scope of work and the work would be issued under the Changes clause of the contract.

21. Several months later, a set of drawings was issued on May 10, 2005 (see **Exhibit 8** to the Certified Claim for drawing excerpts). For the first time, Drawing Sheet L4.16 depicted planter beds being installed at the rear of the existing Monument Lodge. Likewise, Drawing Sheet L5.5, for the first time, depicted a concrete paving pattern and drain locations in the area between the rear of the Monument Lodge and the horseshoe shaped wall. Construction details and elevations, however, remained missing from these drawings.

22. Thereafter, a revised set of drawings was issued on June 3, 2005 (see **Exhibit 9** to the Certified Claim for drawing excerpts), which changed the planting bed configuration behind the Monument Lodge and provided all the necessary information to install underground drains and to pave the rear area of the Monument Lodge (where the Visitor's Center was originally

planned to be constructed) with sidewalk like concrete. In accordance with these drawings, Grunley-Walsh and its subcontractor proceeded to perform grading work, installation of the drainage system, installation of and spreading a stone base and pouring concrete in accordance with the paving pattern that had been provided (see pictures below).



8/2005 Placement of Under-slab Drains at Monument Lodge



8/2005 Grading Work Required for Monument Lodge Site Improvements



8/2005 Paving Work Required for Monument Lodge Site Improvements



8/2005 Paving Work Required for Monument Lodge Site Improvements

23. After Grunley-Walsh's submission of the costs to perform this change work, in an undated letter received from the Park Service (see **Exhibit 10** to the Certified Claim) the Park Service agreed to pay for the removal of existing concrete footers at the rear of the Monument Lodge (formerly under the food service area that had been demoed). They also agreed to pay for

the planting beds the Park Service had required around the Monument Lodge. Modification No. 9 to Task Order No. 35 provided compensation for these changes.

24. As to the remaining change work at the rear of the Monument Lodge, the Park Service's letter stated, "the Government considers this work as part of the original scope." In doing so, the Park Service provided absolutely no explanation as to the basis for their position or why they believed the work (which they had previously indicated would be required pursuant to the Changes clause of the contract) was now part of the original scope. Further, the Government made no effort to address why the original contract drawings indicated the work in this area was "NIC" (i.e. Not In Contract).

25. Pursuant to the Contract's Dispute clause and the Contract Disputes Act, on September 28, 2006, Grunley-Walsh submitted its Certified Claim for the Monument Lodge Site Improvement change work; requesting a Contracting Officer's Final Decision on the matter.

26. All conditions precedent for the filing of this action have been satisfied, waived and/or excused.

**COUNT I**

27. The allegations contained in paragraphs 1 through 26 above are incorporated by reference as through fully set forth herein.

28. Pursuant to the Contract, Grunley-Walsh is entitled to an equitable adjustment in the amount of $60,708 for the additional cost to perform the Monument Lodge Site Improvement change work for the Project.

29. As such, the Government is liable to Grunley-Walsh for $60,708, plus interest thereon as allowed by the Contract Disputes Act.

**WHEREFORE**, Plaintiff, Grunley-Walsh, LLC, demands judgment against Defendant, The United States of America, for award of damages in the amount of $60,708, plus such other and further relief as this Court deems just and proper, including interest as required by the Contract Disputes Act.

Respectfully submitted,

Roger C. Jones

**HUDDLES, JONES**
**SORTEBERG & DACHILLE, P.C.**
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
(301) 621-4120
(301) 621-4473 (fax)
jones@hjpc.com

Counsel for Plaintiff,
Grunley-Walsh, LLC

DATED: 12/1/2006